IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FRANCISCO MORALES,<br><br>                 Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>                 Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF COMMISSIONER<br><br>Case No. 2:13-cv-227-BCW<br><br>Magistrate Judge Brooke C. Wells |

All parties have consented to having United States Magistrate Judge Brooke C. Wells conduct all proceedings in this case, including entry of final judgment, with appeal to the United States District Court of Appeals for the Tenth Circuit.[1] Plaintiff Francisco Morales ("Plaintiff") seeks judicial review of the determination of the Social Security Administration that denied his application for Supplemental Security Income.

The Court has reviewed and considered the parties' briefs, administrative record and relevant case law. For the reasons set forth herein, the Court AFFIRMS the decision of the Commissioner.

## **BACKGROUND[2]**

Plaintiff was born on June 15, 1976.[3] In May 2009, Plaintiff was assaulted and sustained a closed head injury and multiple facial fractures.[4] Plaintiff was hospitalized from May 3, 2009

---

[1] Docket no. 15.

[2] The parties fully set forth the medical history in their respective memoranda. The Court finds it unnecessary to repeat that record in specific detail here. Rather, the Court notes those items that are pertinent to the decision.

[3] Tr. at 36.

[4] Tr. at 425, 427.

to June 5, 2009.[5] Plaintiff contends that this assault and the traumatic brain injury that resulted therefrom has rendered him unable to work and entitled to Social Security benefits.

Relevant to the Court's decision below are the inconsistencies between neuropsychological and psychological testing performed on Plaintiff post assault. On November 4, 2009, Plaintiff was seen by Dan Whitehead, Ph.D. for a consultative examination.[6] Dr. Whitehead interviewed Plaintiff and performed the following tests: Wide Range Achievement Test-4 (WRAT-4); Bender Gestalt Test II (BGT II); Wechsler Adult Intelligence Scale-3 (WAIS-3); Wechsler Memory Scales-3 (WMS-3). Based on this testing, Dr. Whitehead made the following Diagnostic Impressions: Axis I: Deferred; Axis II: V62.89 Borderline Intellectual Functioning (IQ 71-84); Axis III: Deferred to MD; Axis IV: Medical, Academic, Primary Support Group, Social Environment, Occupational, Behavioral; Axis V: Current: 65-75.[7] Dr. Whitehead then made the following assessment:

> [h]is WAIS-3 Full Scale IQ score was in the low average range. His Verbal IQ score was in the low average range. His Performance IQ score was in the low average range. His WMS-3 Working Memory Index score indicated that his ability to use concentration, attentional abilities and memory processes was in the low average range. His WRAT-4 Word Reading level was at the 10th grade level. His WRAT-4 Spelling level was at the 7th grade level. His WRAT-4 Math Computation level was at the 4th grade level. His Bender Gestalt II results were in the average to low average range. This claimant seemed to perform with effort on (sic) the testing conducted. This evaluator felt that this claimant was giving good effort, and that the test results have an adequate level of confidence. Some review documents were provided for this case. These do document a head injury with some surgeries to reconstruct facial bone areas. The numbness to his upper extremities are also discussed. While it is possible that his IQ scores present a mild decline from previously higher abilities, a pre-existing borderline intellect is just as possible. In a practical sense the effects are the same, as there are no significant impairments which would preclude simple task performance.
> Based on the intellect and cognitive abilities demonstrated by the claimant during this evaluation, he seems capable of performing a variety of work activities that

---

[5] Tr. at 423.

[6] Tr. at 539-545.

[7] Tr. at 543.

require simple tasks at a constant level of performance. Persons with intelligence and memory functions in the borderline range and above are typically able to perform a wide variety of simple work functions of a constant nature, as long as there are no other major problems or concerns. I of course defer to an M.D. on any impairments due to the numbness in his arms and hands that he reports.[8]

On January 18, 2011, upon referral from Plaintiff's counsel, Mark Corgiat, Ph.D., evaluated Plaintiff.[9] Similar to Dr. Whitehead, Dr. Corgiat performed the following tests: Wechsler Adult Intelligence Scare-IV; Wechsler Memory Scale-IV; Wide Range Achievement Test-4; Test of Memory Malingering.[10] However, based on his test results, Dr. Corgiat found:

> The current neuropsychological evaluation reveals a pattern of cognitive impairment that is certainly not inconsistent with mild traumatic brain injury (MTBI). However it is more likely that his functional difficulties represent a combination of developmental learning disability and MTBI. Mr. Morales has a much longer history of compromised cognitive abilities. As noted above, he does have a very substantial developmental learning disability. And, his current performance is representative of a global cognitive impairment that is substantially below normal limits. I would note that this level of cognitive proficiency is not inconsistent with his functional history.
> …
> Current diagnoses are as follows:
> Axis I:      294.1  Dementia due to head trauma
>              310.1  Personality change due to traumatic brain injury, disinhibited type
> Axis II:     317    Mild mental retardation
> Axis III:    294.80 Cognitive deficits secondary to TBI
>              310.0  Frontal Lobe Syndrome
>              310.1  Personality change due to TBI
> Axis IV:     Psychological environmental problems: unemployment, social isolation, financial difficulties
> Axis V:      Current GAF: 40 Highest GAF in past year: 45
>
> Mr. Morales' prognosis is poor. He demonstrates significant functional cognitive impairment that represents a combination of premorbid developmental learning disability and less than average intellectual proficiency which has been worsened secondary to traumatic brain injury.[11]

---

[8] Tr. at 544.

[9] Tr. at 600.

[10] Tr. at 603.

[11] Tr. at 606-607.

Mr. Morales' cognitive abilities are compromised at a level that would interfere with his ability to efficiently manage his finances. I would strongly recommend that he be provided assistance in this regard.[12]

In February, 2011, after reviewing Dr. Whitehead's conflicting November 2009 evaluation, Dr. Corgiat wrote a rebuttal opinion.[13] In his rebuttal opinion, Dr. Corgiat stated in relevant part,

[t]he evaluation completed in November 2009 is simply not believable. I do not know how those data were accumulated. But, I can pretty much guarantee that Mr. Morales has never realized a level of cognitive functional ability at that level of proficiency subsequent to the traumatic brain injury. In fact, I would be surprised if he was ever able to premorbidly perform at the level indicated in Dr. Whitehead's report.[14]

In addition to Drs. Whitehead and Corgiat, Plaintiff was evaluated by state agency physicians who opined Plaintiff was not disabled. For example, Dr. R. Paxton opined Plaintiff retained ability to perform, understand and remember simple level tasks and instructions. Plaintiff had no adaptive limitations and was able to work in a non-public setting.[15]

**A. Procedural History**

Plaintiff protectively filed an application for supplemental security income on May 15, 2009.[16] In his application for benefits, Plaintiff alleged an onset date of disability of May 3, 2009.[17] Plaintiff's claims were initially denied on September 2, 2009 and upon reconsideration on November 9, 2009. Thereafter, Plaintiff filed a written request for an administrative hearing on January 6, 2010.

---

[12] Tr. at 607.

[13] Tr. at 629-630.

[14] Tr. at 629.

[15] Tr. at

[16] Tr. at 17.

[17] Id.

More than one administrative hearing was held before an Administrative Law Judge. The first hearing was held on February 16, 2011.[18] At this hearing, Plaintiff testified as to his impairments and Dina Galli testified as an impartial vocational expert.[19] During this hearing, the ALJ pointed out there was a direct conflict in the medical evidence between Dr. Whitehead and Dr. Corgiat.[20] The ALJ stated "[i]t's a he said, she said then and Dr. Corjit essentially claims that Dr. White[head] had improperly tested the claimant here."[21] At the conclusion of the hearing, the ALJ stated: "…I'm going to ask for a medical expert to try to help me resolve that difference between them. I'm not familiar enough with the testing to be able to, draw conclusions like Dr. Corjit has here. So I'm going to ask the medical expert to, to untangle for me or cut through the knot or whatever they need to do to see the difference between the two before I decide the case."[22]

Thereafter, the ALJ requested interrogatories from a medical expert, Dr. Michael Enright.[23] Then a second hearing was held on November 9, 2011 in Salt Lake City. Dina Galli testified as an impartial vocational expert. Dr. Enright was unable to appear at this hearing to testify so a third hearing before the ALJ was then held on December 30, 2011.[24] At this third hearing, impartial vocational expert Dr. Enright testified via telephone and was cross examined by Plaintiff's counsel.[25] Dr. Enright commented on the differences between psychology and neuropsychology and the inconsistencies between the reports of Dr. Corgiat and Dr. Whitehead.

---

[18] Tr. at 43-79.
[19] Id.
[20] Tr. at 76.
[21] Id.
[22] Tr. at 78.
[23] Id.
[24] Tr. at 82.
[25] Id.

The ALJ then commented, "I'm stuck then, Dr. Enright, with deciding which of these two reports are more valid. They both can't be accurate as you've indicated in this addendum to the interrogatory…"[26] Counsel for Plaintiff then concluded the hearing by stating in relevant part:

> [it] comes down to we have two different psychologists administering the same tests at fairly—at about the same times, within a short time of each other and we have different results. And I—and the results on the one psychologist would show that the claimant meets a listing and the results on the other psychologist would show that he does not meet a listing."[27]

**B. The ALJ's Decision**

In his written decision, the ALJ found at Step One of the required sequential evaluation process[28] that Plaintiff had not engaged in substantial gainful activity since May 15, 2009, the date of Plaintiff's application for benefits.[29] At Step Two, the ALJ found Plaintiff had the following severe impairments: (1) organic mental disorder status post traumatic brain injury and (2) borderline intellectual functioning.[30] The ALJ found Plaintiff's diabetes mellitus not to be a severe impairment due to lack of symptoms.[31] At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments contained in the regulations.[32]

---

[26] Tr. at 118-119.

[27] Tr. at 121.

[28] See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(explaining the five-step evaluation process for determining if a claimant is disabled.)

[29] Tr. at 19.

[30] Tr. at 20.

[31] Id.

[32] Id.

In making this finding, the ALJ summarized the tests, findings and opinions of various examinations that were performed after Plaintiff was assaulted. The ALJ summarized the findings as follows[33]:

> On November 4, 2009, the claimant saw Dan Whitehead, Ph.D., for a consultative psychological evaluation. Based on testing, the claimant obtained a Verbal IQ of 84, a Performance IQ of 81 and a Full Scale IQ of 81, all in the low average range. Dr. Whitehead diagnosed borderline intellectual functioning. He also noted no major restrictions of daily activities, no major difficulties in maintaining social functioning and some very mild to mild difficulties of concentration, persistence and pace caused by his combined problems.
>
> On January 8, 2011, the claimant saw Mark Corgiat, Ph.D., for a neuropsychological assessment. Based on testing, his Full Scale composite score was 64. Dr. Corgiat noted he was functioning in the borderline to extremely low range of intellectual ability. Dr. Corgiat diagnosed dementia due to head trauma, personality change due to traumatic brain injury, disinhibited type and mild mental retardation.
>
> On April 18, 2011, Dr. Enright provided responses to Medical Interrogatory—Mental Impairment(s)-Adult (16F). He stated there were conflicting reports of essentially the same evaluation materials presented in a psychological consultative exam on November 4, 2009 (7F) and a neuropsychological exam by a non-treating source on January 18, 2011 (13F) requested by claimant's attorney. He noted the report at Exhibit 7F had much better documentation of the test results and, therefore, would be relied upon. Accordingly, Dr. Enright stated that the claimant had memory problems under Section 12.02, organic mental disorders. As a result, the claimant had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation.
>
> In support of his opinion, Dr. Enright cited Exhibit 13F/9 ("It is likely that the functional difficulties he is experiencing with affective disinhibition, easy fatigability, balance problems and increased anxiety are specifically related to the traumatic brain injury.") 7F/4 [sic] ("Current Level of Functioning...", and 13F/9 ("...his current performance is representative of global cognitive impairment that is substantially below normal limits."). Dr. Enright stated the claimant's impairments did not meet or medically equal the criteria for any impairment described in the Listing of Impairments. He said that, under Section 12.02, there were conflicting reports taken in total do not document meeting or equaling (7F,

---

[33] Normally, the Court would not extensively quote so much of the ALJ's Decision in its opinion. However, in this case, the Court finds this recitation essential to its disposition because the ALJ's analysis and findings of conflicting expert reports is at the heart of Plaintiff's arguments upon appeal.

13F). Under the "C" criteria, he said 2 years' duration requirement for 12.02 was not documented in the record.

…

After considering all the medical evidence, the Administrative Law Judge concurs with Dr. Enright's opinion and find the claimant's mental impairments do not meet or medically equal the criteria set forth under Section 12.02...

The Administrative Law Judge notes that this is a difficult case, but, on balance, Dr. Whitehead's assessment has greater credibility. There is no explanation for dramatically decreased functioning and it is not possible to "fake good" where the opposite possibility of lower scores by a variety of means must be considered appropriate.

The Administrative Law Judge gives Dr. Enright's opinion great weight for the following reasons. Because Dr. Enright did not treat the claimant, his opinion is not entitled to controlling weight and other factors must be considered. He is specialized in the area of psychology. He is experienced at determining limitations based on psychological impairments within the context of disability claims. He had an opportunity to review in detail the two evaluations critical to this case. He provided specific reasons for his opinion in his answers to interrogatories and testified extensively regarding his review of the reports made by Dr. Corgiat and Dr. Whitehead. During his testimony, he noted consistently that Dr. Corgiat had failed to provide all the test results in his discussion of various test results. The claimant's attorney stated that he had not provided Dr. Corgiat with a copy of Dr. Whitehead's report at the time of the evaluation. When he did so, Dr. Corgiat stated he "cannot believe the data provided in that evaluation are accurate" and defended his results. Nevertheless, Dr. Enright pointed out, other factors might have affected the claimant's lower performance on Dr. Corgiat's testing even though Dr. Corgiat said the results on the TOMM, a specific test for malingering given by Dr. Corgiat, were not indicative of any attempt to malinger or dissimulate.[34]

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to "perform light work" with limitations.[35] After formulating Plaintiff's RFC, the ALJ discussed Plaintiff's credibility and the medical opinions in the record. Although the ALJ stated "[c]onsideration also has been given [to] the reports of the State agency medical consultants as well as to other treating, examining and non-examining medical sources and [e]very medical opinion, regardless

---

[34] Tr. at 20-21.

[35] Tr. at 22.

of source, must be evaluated …, the ALJ only discussed and weighed the opinions of Dr. Whitehead, Dr. Enright, and the State Agency Physicians. In this section of the ALJ's opinion, Dr. Corgiat's opinion was not discussed nor weighed.

At Step Four, the ALJ found Plaintiff is unable to perform his past relevant work as an industrial cleaner, inventory clerk or welder helper.[36] Based upon responses to Vocational Expert Interrogatories, which took into account Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff is capable of performing jobs as housekeeper, sorter or agricultural produce and mail clerk.[37] At Step Five the ALJ concluded "[b]ased on the testimony of the vocational expert...the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Therefore, a finding of 'not disabled' is appropriate[.]"[38]

## STANDARD OF REVIEW

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied."[39] If supported by substantial evidence, the findings are conclusive and must be affirmed.[40] Substantial evidence is "more than a scintilla, but less than a preponderance."[41] "The possibility of drawing to inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[42]

---

[36] Tr. at 35-36.

[37] Tr. at 37.

[38] Id.

[39] Mays v. Colvin, 739 F.3d 569, 571 (10th Cir. 2014).
[40] Richardson v. Perales, 402 U.S. 389, 401 (1981).
[41] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).
[42] Zoltanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).

9

In addition, a reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[43] The Court "...may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter be before it de novo.'"[44] Lastly, "[t]he failure to apply the correct legal standard[s] or to provide this court will a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[45]

## ANALYSIS

Plaintiff's brief raises three issues on appeal. (1) Did the ALJ properly use Social Security guidelines to impugn Dr. Corgiat's subsequent psychological testing? (Or How the ALJ's A Priori Argument that You Can't "Fake Good" Was Wrongly Applied to Francisco); (2) Did the ALJ fulfill his duty to develop the record in explaining why the "C" requirement of 12.02 was not met?; (3) Did the ALJ use correct Social Security guidelines to determine Francisco's symptoms and his residual functional capacity?

Upon review of the Plaintiff's arguments, the Court finds, as Defendant correctly points out, "Plaintiff's arguments relate primarily to the conflict in the opinions between Drs. Whitehead and Corgiat." Nevertheless, the Court will examine each of the Plaintiff's arguments.

**A. The ALJ's evaluation of Dr. Corgiat's opinion.**

Plaintiff argues that more weight should have been given to Dr. Corgiat's opinion and presents in his Opening Brief, "alternatives" which he argues the ALJ should have considered. Plaintiff raises in a footnote the ALJ's failure to weigh and evaluate Dr. Corgiat's opinion in the

---

[43] Qualls v. Apfel, 206 F.3d 1368, 1371 (10th Cir. 2000).
[44] Lax, 489 F.3d at 1084 (quoting Zoltanski, 372 F.3d at 1200).
[45] Jensen v Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005)(internal citations omitted).

context of the other medical opinions. Lastly, Plaintiff argues Dr. Corgiat should have been recontacted for further clarification of his opinions.[46]

### i. The ALJ Did Not Err in According Dr. Enright's Opinion Great Weight.

Plaintiff argues "[t]he ALJ's decision relied on Francisco's best scores because they cannot be faked but rejected his lower scores because they could be faked by a variety of means. This was a horrible mistaken a priori belief focusing only on the possibility that Francisco's voluntarily produced lower IQ scores."[47]

As with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.[48] In addition, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."[49] Here, the ALJ properly acknowledged at the initial hearing, the evidentiary conflict present in the record. Thereafter, he called upon an independent medical expert, Dr. Enright, to assist him in resolving the conflict. Dr. Enright testified at a subsequent hearing and Plaintiff was given an opportunity to cross-examine him. In his written opinion, the ALJ summarized the opinions of the various

---

[46] In his briefs, Plaintiff repeatedly mentions a subsequent agency decision that awarded him benefits. The subsequent decision is not a part of the Administrative Record that was before the ALJ or the Appeals Council in this case. Therefore, the Court finds these arguments to be inappropriate and the Court did not consider them in its decision. See Atteberry v. Finch, 424 F.2d 36, 39 (10th Cir. 1970)("Court review of the [Commissioner's] denial of Social Security disability benefits is limited to a consideration of the pleadings and the transcript filed by the [Commissioner] as required by 42 U.S.C. § 405(g). It is not a trial de novo. The court is not at liberty to consider evidence not in the record certified by the [Commissioner].")(internal citations omitted); but see Allen v. Commissioner of Social Security, 561 F.3d 646, 653 (6th Cir. 2009)("A sentence six remand would be appropriate based on [a] subsequent favorable decision only if the subsequent decision was supported by new and material evidence that [claimant] had good cause for not raising in the prior proceeding. It is [the claimant's] burden to make this showing under § 405(g).")

[47] Opening Br., docket no. 30 at p. 9.

[48] See e.g., Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000): Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988).

[49] Lax at 1084.

medical providers and provided specific, legitimate reasons as to why he adopted Dr. Enright's opinion that resolved the evidentiary conflict in favor of Dr. Whitehead.

Therefore, the Court finds that substantial evidence supports the ALJ's opinion and he applied the proper legal standards in evaluating this conflict in the evidence. As the factfinder, the ALJ was within his authority to weigh and evaluate conflicting evidence. The ALJ's reasoning in doing so was not legally flawed and Plaintiff's arguments ultimately request this Court to reweigh the evidence.

> **ii.    The ALJ's Alleged Failure to Discuss and Weigh Dr. Corgiat's Opinion Constitutes Harmless Error**

Plaintiff argues that the ALJ failed to discuss and weigh Dr. Corgiat's opinion. "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions…"[50] However, the need for express analysis is weakened "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC."[51] In addition, the 10th Circuit has articulated "where…[a Court] can follow the adjudicator's reasoning in conducting [its] review and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."[52] "The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection."[53]

Here, in a section of the ALJ's opinion titled "Medical Opinions-Generally," the ALJ discussed and weighed the opinions of Dr. Whitehead, Dr. Enright, and the State Agency

---

[50] Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012(internal citations omitted).

[51] Id. at 1162.

[52] Id. at 1166.

[53] Id.

Physicians.[54]  The opinion of Dr. Corgiat is not discussed nor weighed in this section of the ALJ's opinion.  However, the ALJ stated with regard to Dr. Enright that "[h]e had an opportunity to review in detail the two evaluations critical to this case.  He provided specific reasons for his opinions in his answer to interrogatories and testified extensively regarding his review of the reports made by Dr. Corgiat and Dr. Whitehead.  During his testimony, he noted consistently that Dr. Corgiat had failed to provide all the test results in his discussion of various test results."

It is clear that by affording Dr. Enright's opinion "great weight," the ALJ was affording Dr. Corgiat's opinion lesser weight.   The Court agrees that in this case the ALJ's failure to specifically discuss Dr. Corgiat's opinion in the context of the other medical opinions constitutes harmless error because of the extensive commentary the ALJ provided earlier in his opinion with regard to the conflicts in opinion of Drs. Whitehead and Corgiat.  The Court finds Plaintiff's argument that the ALJ improperly delegated his decision-making powers to Dr. Enright by adopting his opinions lacks merit.

Thus, while failure to weigh an opinion may not constitute harmless error in every case, in the instant case the Court was able to follow the ALJ's reasoning with regard to the evaluation of the medical opinions, including Dr. Corgiat's opinion.  Based on the ALJ's commentary earlier in his opinion and at the administrative hearing, it is clear the ALJ considered Dr. Corgiat's opinion and weighed it against all the other opinions.   Because the crux of this case is the evidentiary conflict between Dr. Whitehead and Dr. Corgiat, and the ALJ relied on Dr. Enright's resolution of the conflict in determining the Plaintiff's RFC, the Court finds that any error in specifically discussing Dr. Corgiat's opinion in the "medical opinion section" is harmless.  To find otherwise would be to improperly demand technical perfection.

---

[54] Tr. at 34-35.

### iii. The ALJ was Under No Obligation to Recontact Dr. Corgiat.

Lastly, Plaintiff raises the argument that if Dr. Enright didn't understand Dr. Corgiat's testing procedures, the ALJ had a duty to recontact Dr. Corgiat. The regulations and policy interpretations recognize, an ALJ need only to recontact a treating source "[i]f evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled."[55] In the instant case, Plaintiff argues the ALJ should have recontacted Dr. Corgiat so that Dr. Enright could have the data in an easier-to-read and simpler-to-understand format.[56] However, the Court disagrees. The ALJ had no duty to recontact Dr. Corgiat because the evidence was adequate to evaluate whether Plaintiff was disabled. The ALJ had Plaintiff's treatment notes for his hospital stay and subsequent psychological evaluations and opinions. Although the ALJ did state he was confused and perplexed at the contradictory opinions, as explained above, the ALJ enlisted the assistance of an independent medical expert and weighed and properly evaluated the evidence before him. The Court agrees with Defendant's argument that "[w]hile Plaintiff may disagree with the result, the record…was complete and detailed enough to allow the ALJ to render a disability determination."[57]

Thus, the Court finds no error in the ALJ's analysis of the medical opinions.

### B. The "C" Criteria of 12.02

Plaintiff argues the ALJ erred by not properly taking into the account of the durational requirement of Listing 12.02(c). According to Plaintiff,

---

[55] Daniell v. Astrue, 384 Fed. App'x 798, 803 (10th Cir. 2010)(internal citations omitted); see also SSR 96-5p, 1996 WL 374183, at *6 (S.S.A. July 2, 1996)("…if the evidence does not support a treating sources' opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis for the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion).

[56] Docket no. 30 at p. 12-13.

[57] Docket no. 31 at p. 15.

Dr. Enright stated in his April 18, 2011 written report that the "C" criteria did not meet the two year duration requirement documented in the record. [Francisco was injured in May, 2009](sic), However, the ALJ's opinion written nearly ten months later, in February, 2012 did not address the change in time interval and how the C criteria could be affected. All the ALJ said about the C-criteria was that he agred with Dr. Enright's initial report.

While it is true Dr. Enright stated Plaintiff did not have "2 years duration requirement for 12.02 documented in the record,"[58] the Court does not find the ALJ's reliance on Dr. Enright's opinion to be an error. First, the Court notes that Dr. Enright's opinion was the last opinion in the record and the fact that the ALJ's report was written a year after the interrogatories does not by itself constitute error. Plaintiff has not pointed to any specific evidence or case law that would cause the Court to consider whether the two year durational requirement for this particular listing had been met after Dr. Enright's opinion. In his opinion, the ALJ stated, he considered all the evidence in the record in making this determination and concurred with Dr. Enright in finding Plaintiff did not meet a listing. The Court finds substantial evidence supports this conclusion. Importantly, in addition to Dr. Enright, the state agency consultants also did not find Plaintiff met listing 12.02.[59]

Therefore, because the ALJ acted within the regulations and a reasonable person could accept the evidence as adequate to support the ALJ's step three finding, substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or equal a listing.

---

[58] Tr. at 634.

[59] See 20 C.F.R. § 416.926(c)("When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairments…[and] [w]e also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner.")

**C. RFC Determination**

Residual functional capacity ("RFC") is an administrative determination left solely to the Commissioner.[60] A claimant's RFC reflects the ability to do physical, mental, and other work activities on a sustained basis despite limitations from the claimant's impairments.[61] In determining the claimant's RFC, the decision maker considers all of the claimant's medically determinable impairments, including those considered not "severe."[62]

Plaintiff challenges the ALJ's RFC assessment on the basis of that the ALJ found " …the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the functional capacity assessment." According to Plaintiff, "Francisco argues the credibility testing by Dr. Corgiat (as endorsed by the ALJ's expert) was consistent and valid."[63]

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence."[64] Nor will this court substitute its judgment on the credibility of witnesses from which the ALJ has seen and heard testimony. To do so would turn this Court into a super trial examiner weighing the credibility of one witness against another, which is improper in an administrative appeal.[65]

Here, the RFC's specific limitations are tied to the medical evaluations. The Court again finds Plaintiff is essentially requesting the Court to reweigh the evidence with regard to the

---

[60] See 20 C.F.R. § 404.1546(c) (at the administrative hearing level, the ALJ is responsible for assessing residual functional capacity); SSR 96-5p, 1996 WL 374183, at *2 (stating that some issues, such as residual functional capacity, are not medical issues regarding the nature and severity of an individual's impairment(s) but instead administrative findings that are dispositive of a case, and thus are reserved to the Commissioner).

[61] See 20 C.F.R. §§ 404.1545, 416.945.

[62] 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

[63] Docket no. 30 at p. 19.

[64] Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).

[65] See e.g., Ready Mixed Concrete, Co. v. N.L.R.B., 81 F.3d 1546, 1551 (10th Cir. 1996); Osteopathic Hosp. Founders Ass'n v. N.L.R.B, 618 F.2d 633, 636 (10th Cir. 1980).

ALJ's findings as to Plaintiff's credibility and RFC. For example, in his opening brief, Plaintiff, recited the ALJ's opinion where the ALJ lists several items to demonstrate how Plaintiff has exaggerated his symptoms and[66] then states, "[i]f the ALJ is making the point that these statements show medical treatment inconsistent with the findings of Dr. Whitehead's report, then Francisco would argue that this is further evidence of Dr. Whitehead's report being wrong, callow or in error."[67] Plaintiff's arguments do not constitute a basis for remand or reversal. Therefore, the Court finds the RFC and the ALJ's credibility determination to be supported by substantial evidence and no legal error was committed.

## CONCLUSION

Upon appeal, the issue for the Court's review is whether the ALJ's decision was supported by substantial evidence. After a complete review of the record, the Court finds the ALJ's findings were supported by substantial evidence and the correct legal standards were applied. In sum, Plaintiff's arguments ultimately amount to a request for this Court to reweigh the evidence—something the Court is not allowed to do.

Therefore, for the foregoing reasons, the Court finds Plaintiff's arguments do not warrant reversal nor remand for further proceedings. Therefore, IT IS HEREBY ORDERED that the decision of the Commissioner be AFFIRMED.

DATED this 22 October 2014.

Brooke C. Wells
United States Magistrate Judge

---

[66] Docket no. 30, p. 21-22.

[67] Id. at p. 23.